UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRACI C. YATES, | ) |
| | ) No. CV-08-0058-CI |
| Plaintiff, | ) |
| | ) ORDER GRANTING PLAINTIFF'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) AND REMANDING FOR |
| MICHAEL J. ASTRUE, | ) ADDITIONAL PROCEEDINGS |
| Commissioner of Social | ) PURSUANT TO SENTENCE |
| Security, | ) FOUR 42 U.S.C. § 405(g) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 22, 24.) Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and remands the matter to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Plaintiff applied for disability income benefits (DIB) and Supplemental Security Income (SSI) on December 23, 2003. (Tr. 5, 90-93.) She alleges disability due to borderline personality disorder, dysthymia, back pain and wrist injury. (Tr. 103.) She initially alleged an onset date of March 19, 2001. (Tr. 112.) Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS
PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 1

(ALJ) R. J. Payne on April 19, 2006. (Tr. 609-27.) At this hearing, Plaintiff's alleged onset date was amended to June 1, 2003. (Tr. 613.) Plaintiff appeared but did not testify; medical expert Ronald Klein, Ph.D., testified. (Tr. 613-27.) The ALJ determined additional evidence was needed, and a supplemental hearing was held on September 7, 2006, at which Dr. Klein and Arthur Craig, M.D., testified. (Tr. 630.) Plaintiff did not appear at this hearing for "good cause" shown. (Tr. 632, 654.) A third hearing was held on January 24, 2007, at which Plaintiff and vocational expert Tom Moreland testified. (Tr. 652-702.) Plaintiff was represented by counsel at all three hearings. On February 10, 2007, ALJ Payne denied benefits; review was denied by the Appeals Council. (Tr. 7-10, 20-30.) This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS
PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 2

*de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

## STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. Plaintiff was 43 years old at the time of the last administrative hearing. (Tr. 656.) She completed her high school equivalency degree and had attended

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 3

vocational school. She was separated from her spouse, and lived alone in an apartment. (Tr. 658.) Plaintiff had past work experience as a food server and housekeeper. (Tr. 661-62.) She testified she had received disability benefits in the past, but the benefits were terminated in 2000, for failure to attend a review hearing. (Tr. 667.) She has a history of drug abuse and criminal activity, including incarcerations. She testified she had not used drugs since September 2002. (Tr. 694.) Plaintiff stated she was unable to work due to back pain, colitis and mental disorders. (Tr. 667.) At the hearing, Plaintiff testified she needed to elevate her feet due to leg swelling. (Tr. 681.) She testified she could sit for one to two hours, at most, or a minimum of five to ten minutes; could stand 15 minutes to a half hour; could walk two blocks, climb a flight or two of stairs; and could lift five to ten pounds. (Tr. 683-87.) She had a valid driver's license and drove her grandmother's car. She indicated she used a motorized scooter, when going more than two blocks, and used a cane everyday. (Tr. 684-85.) She also testified she suffered from depression and anxiety and did not do well around people. (Tr. 691.)

## ADMINISTRATIVE DECISION

The ALJ determined Plaintiff's date of last insured was June 30, 2003. (Tr. 20.) At step one of the sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since 1994. (Tr. 22.) At step two, he found Plaintiff had the severe impairments of "complaints of back pain with no significant clinical or objective findings, mild to moderate sleep apnea (improved with CPAP treatments), right wrist reconstruction surgery

with residual flexion/extension limitations, a history of breast cancer, and a history of anxiety and dysthymia." (Tr. 23.)  After a discussion of the medical evidence, the ALJ found Plaintiff did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Listings). (Tr. 26.)  The ALJ found Plaintiff's statements regarding the severity of her impairments and symptoms were not credible. (Tr. 27.)  At step four, he determined she had the residual functional capacity (RFC) to perform sedentary work with non-exertional physical limitations, and therefore, could not perform past relevant work. (Tr. 26-28.)  At step five, considering vocational expert testimony, he found Plaintiff could perform other jobs in the national economy and concluded she was not disabled as defined by the Social Security Act. (Tr. 29.)

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff contends the ALJ erred when he (1) improperly rejected examining physician opinions regarding the diagnoses and severity of her mental impairments at step two; (2) did not properly assess the severity of her impairments in assessing her ability to work at steps four and five; and (3) improperly relied on medical expert testimony. (Ct. Rec. 23 at 13-19.)

**DISCUSSION**

**A.   Medically Determinable Impairments**

To satisfy step two's requirement of a severe impairment, the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS
PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 5

claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. §§ 404.1529, 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of pain or symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th ,Cir. 1991). However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994). Thus, the Commissioner has passed regulations which guide evaluation of the evidence at step two. Those regulations state an impairment may be found to be "non-severe" *only* when evidence establishes a "slight abnormality" that has "no more than a *minimal effect* on an individual's ability to work." *Id.* (*citing Social Security Ruling (SSR)* 85-28).

Further, the ALJ must consider the combined effect of a claimant's impairments, severe and non-severe, on the ability to function, without regard to whether each alone is sufficiently severe. *See* 42 U.S.C. § 423(d)(2)(B)(Supp. III 1991). Therefore, it is necessary for the Commissioner to identify non-severe impairments supported by the evidence, as well as severe impairments. It is noted on independent review that the ALJ failed to make findings regarding Plaintiff's medically determinable non-

severe impairments. (Tr. 23-26.)  The combined effect of all medically determinable physical and mental impairments should be considered at step three and four.  20 C.F.R. §§ 404.1526(a)(c), 416.926(a)(c); 404.1545(a)(2), 416.945(a)(2).  The failure to do so is legal error requiring remand. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

**B.   Severe Impairments**

The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987).  The adjudicator's role at step two is explained by *SSR* 85-28:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

*SSR* 85-28.  The regulations advise the adjudicator that "[g]reat care should be exercised in applying the not severe impairment concept." *Id*.

In determining whether a claimant has a severe impairment the ALJ must evaluate the medical evidence submitted and explain the weight given to the opinions of accepted medical sources in the record. The regulations distinguish among the opinions of three types of accepted medical sources: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but

express their opinion based upon a review of the claimant's medical records.  20 C.F.R. §§ 404.1527, 416.927.  A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion.  *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830.  "As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (citation omitted).  If the opinion is contradicted, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews,* 53 F.3d at 1043.  The testimony of a non-examining medical expert by itself cannot be considered substantial evidence that supports the rejection of an examining physician.  *Lester*, 81 F.3d at 831.

In addition to medical source opinions, the ALJ is required to consider "other source" opinions.  Under the Regulations, "other sources" include nurse practitioners, physicians' assistants, mental health therapists, teachers, social workers, spouses and other non-medical sources.  20 C.F.R. §§ 404.1513(d), 416.913(d).  "Other source" testimony can never establish a diagnosis or disability absent corroborating competent medical evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  More weight is given to the opinion of a non-examining medical source than that of a non-medical source.  20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  However, the ALJ is required to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS
PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 8

"consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  An ALJ is obligated to give reasons germane to "other source" testimony before dismissing or discounting it.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Here, Plaintiff submitted psychological evaluations from examining psychologists Deborah Brown, Ph.D.; Kayleen Islam-Zwart, Ph.D.; Dennis Pollack, Ph.D., and James Bailey, Ph.D.  She also submitted medical treatment notes, which included observations from her mental health therapists and physician's assistants.  In January 2004, Dr. Brown administered a mini-mental status exam (within normal limits, reliable results), Trails A and B (within normal limits), and the Personality Assessment Index (PAI)(possibility of exaggeration of complaints, but results interpretable). (Tr. 221.) Dr. Brown found the results supported a diagnosis of Dysthymic Disorder, but not a full diagnosis of borderline personality disorder. (Tr. 222.)  She also found Plaintiff's complaints were consistent with testing results.  (*Id*.)  She assessed several "marked" limitations in cognitive and social function, with an expected duration of six months.  (Tr. 225-26.)

Plaintiff was diagnosed with carcinoma *in situ* (right breast) in mid-2004, and underwent several surgeries, chemotherapy and radiation treatments from October 2004 through September 2005. (Tr. 384-404.)  In April 2004, Plaintiff was receiving mental health treatment at Spokane Mental Health Center and Family Service Spokane. (Tr. 407-64, 476-500.)  Her therapists consistently noted

symptoms of fatigue, depression and post-traumatic symptoms. (*See e.g.,* Tr. 431, 441-43, 447-48, 487, 490, 492, 496.) In April 2005, Dr. Islam-Zwart, supervised by Dr. Brown, re-evaluated Plaintiff's mental state. (Tr. 277-280.) In addition to a mental status exam, the following objective tests were administered: Trails A and B (mildly impaired); Fifteen Item Memory test (no indication of memory malingering); and the PAI (interpretable, but indicating exaggeration of problems). (Tr. 279.) The examining psychologist observed symptoms of depression and anxiety that would interfere with work activities, and made formal diagnoses of PTSD, undifferentiated somatoform disorder and personality disorder (NOS). (Tr. 279.) It was also noted Plaintiff had been in mental health treatment, including medication, for over one year. (*Id.*)

In April 2006, Dr. Pollack evaluated Plaintiff, based on a review of the records, a mental status exam, and results of the following objective tests: Wechsler Adult Intelligence Scale (WAIS)(low average range of intelligence); Minnesota Multiphasic Personality Inventory II (MMPI-2) (attempt to present self in a "most unfavorable light" with scores suggesting serious psychopathology and "perhaps of a Bipolar nature"); Test of Memory Malingering (TOMM) (good effort, not malingering); Millon Clinical Multixial Inventory III (MCMI-III) (highly unusual results but considered valid). (Tr. 465-470.) Dr. Pollack commented that the scores on her personality testing were "so elevated as to make an interpretation of the scores very difficult." (Tr. 471.) Nonetheless, based on these scores and similar scores obtained in additional testing, he diagnosed major depressive disorder

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS
PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 10

(chronic), polysubstance dependence in remission, PTSD, panic disorder with agoraphobia, and personality disorder with antisocial and borderline features. (Tr. 471.) He opined Plaintiff's scores indicated she was not malingering. (*Id.*) In a Mental Medical Source Statement completed with the evaluation, Dr. Pollack found "marked" limitations in Plaintiff's ability to perform activities within a schedule and maintain regular attendance, and in her ability to complete a normal workday and perform at a consistent pace. (Tr. 473.) The ALJ rejected these opinions. (Tr. 24.)

At the April 19, 2006, hearing, medical expert Ronald Klein, Ph.D., testified there was no documentation of "inability to perform normal tasks" prior to December 2004. (Tr. 620.) Noting unusual scores and elevated scores that suggested exaggeration of symptoms, Dr. Klein opined the results from psychological testing by Dr. Pollack were not valid. (Tr. 622.) He also considered use of Dr. Pollack's Global Assessment of Functioning (GAF) score of 35 unreliable, as it reflected an individual "who's virtually in a hallucinatory state, a psychotic." (Tr. 623.) He testified the GAF system is subjective and was not designed for use in disability hearings. (Tr. 624.) Dr. Klein found evidence of depressive disorder and personality disorder in the area of unstable interpersonal relationships and impulsive and damaging behavior, causing no more than mild limitations. (Tr. 556, 617-18.)

After the first hearing, the ALJ ordered a new psychological evaluation with testing. (Tr. 627.) Dr. James Bailey evaluated Plaintiff on May 11, 2006, based on a review of the records, interview and mental status exam, Weschler Memory Scale (WMS-

III)(congruent with prior IQ testing, visual memory within normal range, and auditory memory in the borderline range); and Miller Forensic Assessment of Symptoms Test (M-FAST) (positive for malingering). (Tr. 525.) He noted Plaintiff tended to exaggerate symptoms, consistent with MMPI-2 scales reported by Dr. Pollack. (*Id.*) Dr. Bailey diagnosed Personality Disorder with borderline antisocial factors, noting "a very strong disability conviction." (Tr. 526.)

At the second hearing, Dr. Klein reviewed the results from Dr. Bailey's evaluation and discussed evidence of a depressive disorder. (Tr. 639.) He found no mental impairments that met the Listings, noting that M-FAST results showed "malingering on the psychiatric symptomatolgy," thus further diminishing Plaintiff's credibility. (Tr. 639, 640.) In addition, Dr. Klein observed Plaintiff reported information to Dr. Bailey that was not referenced elsewhere in the record, most notably a report she was shot in the back in 2002. (Tr. 522, 642.) In his April 2006 and September 2006 Psychiatric Review Technique forms, Dr. Klein opined Plaintiff had no severe impairments. (Tr. 546, 556.)

At step two, the ALJ found Plaintiff had the severe impairments of "a history of anxiety and dysthymia," but gave no explanation as to the basis for this finding, or to weight given or reasons for rejecting Dr. Brown's diagnoses (based on objective medical evidence) of PTSD, undifferentiated somatoform disorder and personality disorder (NOS) made in April 2005. Further he did not give specific and legitimate reasons for rejecting her findings of "marked" limitations in cognitive and social functioning. Although

the ALJ mentioned Dr. Bailey's "primary diagnosis of personality disorder," he did not adopt that diagnosis as an impairment, severe or non-severe, failed to explain what weight was given to Dr. Bailey's opinions regarding Plaintiff's limitations, and did not specifically reject the diagnosis or limitations.[1]  (Tr. 24.) Failure to properly reject examining physicians' opinions is reversible error. *Andrews,* 53 F.3d at 1043.

Although the ALJ briefly summarized Dr. Klein's medical expert opinions (Tr. 26), he did not explain what, if any, weight was given to that testimony and what other evidence in the record supported Dr. Klein's conclusions.  (Tr. 26.)  This also appears to be the case with Dr. Craig's testimony regarding Plaintiff's physical limitations. (Tr. 28.) Without support from other evidence in the record, reliance on medical expert testimony is legal error. *Lester*, 81 F.3d at 831.

For step two purposes, Plaintiff met her burden of providing

---

[1] It is also noted on independent review that unrejected limitations assessed by Dr. Brown and Dr. Bailey were neither included in the ALJ's hypothetical to the vocational expert at the hearing nor in the ALJ's final step four or five findings. Vocational expert testimony has no evidentiary value if the hypothetical question posed does not include all unrejected limitations and restrictions supported by the record. *Magallanes v. Bowen,* 881 F.2d 747, 756 (9th Cir. 1989) (*citing Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988)).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS
PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 13

objective medical evidence consisting of signs, symptoms, and laboratory findings of mental disorders, as well as medical records documenting ongoing treatment with medication. 20 C.F.R. §§ 404.1526, 416.926; *Webb v Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Further, Plaintiff's subjective complaints are consistent with diagnosis of depression and personality disorder.[2] The evidence presented establishes more than "slight abnormality" in Plaintiff's mental condition due to depression, post-traumatic stress syndrome, and personality disorder. The ALJ's step two findings are based on legal error.

**C. Obesity**

On independent review, it is noted that medical sources have reported negative effects of Plaintiff's obesity on her various medical conditions and treatment. (*See e.g.* Tr. 300, 519-20, 536-37, 544, 634.) While obesity has been eliminated as a Listing, it can constitute the equivalent of a Listing. *SSR* 02-01p. The current prefaces to the musculoskeletal, respiratory and cardiovascular body system Listings provide guidance about the potential effects obesity has in causing or contributing to

---

[2] Although the ALJ's credibility findings have not been challenged, the ALJ failed to specify which of her subjective complaints he found not credible. (Tr. 27.) The court is unable to review what, if any, symptoms have been rejected. On remand, the ALJ shall identify allegations deemed unreliable and give "clear and convincing" reasons for rejecting them. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell,* 947 F.2d at 345-46.

impairments in those body systems.  *See, e.g.,* 20 C.F.R. Part 404, Subpt. P, App. 1, Section 1.00Q.  In addition, according to the Commissioner, "obesity may cause or contribute to mental impairments such as depression."  *SSR* 02-01p.  The Ruling recognizes that obesity will constitute a severe impairment when "it significantly limits an individual's physical or mental ability to do basic work activities."  *SSR* 02-01p.  A failure to consider obesity where the record is clear that obesity exacerbates a claimant's reported illnesses is reversible error.  *Burch v. Barnhart*, 400 F.3d 676, 681-82 (9th Cir. 2005); *Celaya v. Halter*, 332 F.3d 1177, 1181-82 (9th Cir. 2003).  Here, the ALJ failed to factor in Plaintiff's documented obesity in combination with her physical and mental impairments at step two.  Further, he did not consider the effect obesity has upon Plaintiff's ability to perform routine movement and necessary physical activity within the work environment at step four.  *SSR* 02-01p.  The ALJ's failure to consider Plaintiff's obesity in his sequential evaluation is reversible error.

**D.    Remedy**

There are two remedies where there has been a failure to provide adequate reasons for rejecting the opinions of a treating or examining psychologist.  The general rule, found in the *Lester* line of cases, is to "credit that opinion as a matter of law."  *Lester,* 81 F.3d at 834; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989).  Under the alternate approach found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the

opinion. *See also Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990)(*citing McAllister*). Remand for immediate benefits is appropriate only when it is clear from the record that Plaintiff is disabled. *Benecke*, 379 F.3d at 593; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand for additional proceedings is the proper disposition. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990).

Here, remand is necessary for proper evaluation of opinions from acceptable medical sources, and other sources who have observed Plaintiff's symptoms, and new step two findings. However, Plaintiff may not succeed in proving she is "disabled" (as defined by the Social Security Act) at step two, because a step two determination that an impairment is severe "only raises a *prima facie* case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (*citing Tackett*, 180 F.3d at 1100). The ALJ is required to consider all impairments, severe and non-severe, in combination in assessing Plaintiff's ability to perform work activities at steps four and five. On remand, additional medical evidence may be submitted. The ALJ shall conduct a new hearing with vocational expert testimony, conduct a new sequential evaluation, and render a new decision which will include, but is not limited to, an explanation of weight given to the opinions of all acceptable medical sources and other sources and new credibility findings. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 22)** is **GRANTED.** The matter is remanded to the Commissioner for additional

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS
PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 16

1  proceedings pursuant to 42 § U.S.C. § 405(g) and consistent with the
2  decision above.
3      2.   Defendant's Motion for Summary Judgment dismissal **(Ct.
4  Rec. 24)** is **DENIED**.
5      3.   Application for attorney fees may be made by separate
6  motion.
7      The District Court Executive is directed to file this Order and
8  provide a copy to counsel for Plaintiff and Defendant.  The file
9  shall be **CLOSED** and judgment entered for **Plaintiff**.
10     DATED March 10, 2009.

                        S/ CYNTHIA IMBROGNO
                     UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS
PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) - 17